IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| EILEEN WALTER,<br><br>     Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of the Social Security<br>Administration,<br><br>     Defendant. | CV 17-58-BLG-TJC<br><br>**ORDER** |

On May 8, 2017, plaintiff Eilene Walter ("Plaintiff")[1] filed a complaint

pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act"), requesting

judicial review of the final administrative decision of the Commissioner of Social

Security ("Commissioner") regarding the denial of Plaintiff's claim for disability

insurance benefits and supplemental security income under Titles II and XVI of the

Act, 42 U.S.C. §§ 401-433, 1381-1383f.  (Doc. 1.)  On July 10, 2017, the

Commissioner filed the Administrative Record ("A.R.").  (Doc. 6.)

---

[1] Though the Complaint provides Plaintiff's name as "Eileen" Walter, all of the
documents contained in the Administrative Record display Plaintiff's name as
"Eilene" Walter.  Plaintiff subsequently altered the caption in her opening brief to
read "Eilene."  *See* Doc. 17 at 1.  The Court therefore assumes the latter spelling is
the correct one, but it will preserve the incorrect spelling in the case caption to
conform to the spelling contained in the Court's electronic filing system.

Presently before the Court is Plaintiff's motion for summary judgment, seeking reversal of the Commissioner's denial and remand for an award of disability benefits. (Doc. 17.) The Commissioner submitted a response brief on December 18, 2017 (Doc. 18); Plaintiff filed a reply on January 2, 2018. The motion is fully briefed and ripe for decision. (Doc. 19.)

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court finds the case should be **REMANDED** for further administrative proceedings

## I.       PROCEDURAL BACKGROUND

Plaintiff filed applications for disability insurance benefits and supplemental security income benefits in June 2013. (A.R. 13.) Plaintiff initially alleged that she has been unable to work since August 30, 2012, but later amended that date to June 1, 2014. (A.R. 13, 40.) The Social Security Administration denied Plaintiff's application initially on December 4, 2013, and upon reconsideration on April 25, 2014. (A.R. 130-132, 106-127.)

On June 27, 2014, Plaintiff filed a written request for a hearing. (A.R. 141-142.) Administrative Law Judge Michele M. Kelley (the "ALJ") held a hearing on July 28, 2015. (A.R. 32-83.) On August 27, 2015, the ALJ issued a written decision finding Plaintiff not disabled. (A.R. 10-30.)

Plaintiff requested review of the decision on October 22, 2015. (A.R. 9.)
The ALJ's decision became final on March 9, 2017, when the Appeals Council
denied Plaintiff's request for review. (A.R. 1-7.) Thereafter, Plaintiff filed the
instant action.

## II.    LEGAL STANDARDS

### A.    Scope of Review

The Act allows unsuccessful claimants to seek judicial review of the
Commissioner's final agency decision. 42 U.S.C. §§ 405(g), 1383(c)(3). The
scope of judicial review is limited. The Court must affirm the Commissioner's
decision unless it "is not supported by substantial evidence or it is based upon legal
error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). *See also Bayliss v.
Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's
decision to deny benefits only if it is based upon legal error or is not supported by
substantial evidence."); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453,
1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a
preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d
1064, 1066 (9th Cir. 1997)). "Substantial evidence is relevant evidence which,
considering the record as a whole, a reasonable person might accept as adequate to

support a conclusion." *Flaten*, 44 F.3d at 1457. In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)). The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."). However, even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

### B.     Determination of Disability

To qualify for disability benefits under the Act, a claimant must show two things: (1) she suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months

or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work she previously performed, or any other substantial gainful employment which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). A claimant must meet both requirements to be classified as disabled. *Id*.

The Commissioner makes the assessment of disability through a five-step sequential evaluation process. If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin*., 223 F.3d 968, 974 (9th Cir. 2000)). The five steps are:

1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

Although the ALJ must assist the claimant in developing a record, the claimant bears the burden of proof during the first four steps, while the Commissioner bears the burden of proof at the fifth step. *Tackett v. Apfel*, 180 F.3d 1094, 1098, n.3 (citing 20 C.F.R. § 404.1512(d)). At step five, the Commissioner must "show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id*. at 1100 (quoting 20 C.F.R. § 404.1560(b)(3)).

## III.   FACTUAL BACKGROUND

### A.   Hearing

A hearing was held before the ALJ on July 28, 2015, in Billings, Montana. Plaintiff appeared with counsel, Molly C. Ward. Ms. Ward explained that Plaintiff suffers from anti-phospholipid antibody syndrome, which was diagnosed in 2004. (A.R. 39.) The disease causes blood clotting and risk of stroke, which must be controlled by Coumadin therapy. (A.R. 39-40.) The goal of the therapy is to keep Plaintiff's International Normalized Ratio (INR) between 3.5 and 4.0. *Id.* But

when her INR is reduced, Plaintiff claims to suffer from symptoms of tingling, numbness and pain in her fingers, as well as headaches. *Id.*

### 1. Plaintiff's Testimony

Plaintiff testified she gets her INR checked monthly or biweekly, and claims "it's always out of range." (A.R. 47.) Although, records indicate some periods where Plaintiff has gone "at least a couple months" without seeing a doctor. Plaintiff explained that she does not always have access to a vehicle that would allow her to see a doctor. Also, she said "it gets tiring" having to explain her medical history to new providers. (A.R. 47-48.) She states that she regularly takes her Coumadin and adheres to her prescribed diet. (A.R. 47.)

Plaintiff was previously employed by NOVA One. (A.R. 41.) She was employed in a full-time capacity, although her testimony does not reveal the nature of her position. (A.R. 41-42.) Plaintiff states that NOVA One sent her home "almost daily" toward the end of her tenure due to migraine headaches. (A.R. 42.) The job ultimately ended in August or September of 2014. (A.R. 42.) Plaintiff subsequently attempted to work at Tender Nest as a CNA "helping elderly people with lifting." (A.R. 43.) Plaintiff worked at that job for "a couple months," but was terminated after she injured her back lifting one of her patients. (A.R. 43.) Plaintiff later applied for a job at McDonald's but was not hired. (A.R. 44.)

Plaintiff has tried numerous medications to alleviate her migraines, and nothing has worked. (A.R. 53.) She estimates that she has migraines once or twice per week; she believes they are influenced by the weather. (A.R. 53.) When she has a migraine, Plaintiff will lay down for two to three hours will all lights off and windows closed. (A.R. 53-54.)

Plaintiff testified she also has numbness and tingling in both hands, feet and toes. (A.R. 49.) The numbness in her hands causes her to drop items, such as "a pencil, a spoon, plates, whatever I'm holding at the time." (A.R. 49.) Plaintiff said it took her "a couple days" to type a letter to her attorney due to the pain and numbness in her hands. (A.R. 50.) Plaintiff does not "recall any time that they are not tingling or numb." (A.R. 54.)

Plaintiff limits her time on the telephone because holding the phone causes pain and numbness in her hands. (A.R. 50.) Plaintiff stated that over the course of a 10-15-minute phone call with her attorney, she probably switched hands 20 times, in addition to holding the phone with her shoulder. (A.R. 50-51.)

Plaintiff also testified it takes her longer to shower because holding her hands at head-level exacerbates the problems. (A.R. 51.) Plaintiff's daughter often has to shave Plaintiff's legs for her. (A.R. 51.) Plaintiff also has difficulty clasping her bra and wearing clothes with buttons. (A.R. 51-52.)

Plaintiff acknowledged that she was referred to a doctor by the Social Security Administration for an evaluation of her symptoms.  (A.R. 48.)  Despite Plaintiff's professed problems with her hands, the doctor reportedly found Plaintiff's gripping, handling, and fingering to be adequate.  (A.R. 48-49.)  Plaintiff claims, however, that doctor did not perform any tests on her hands, and she also explained that the problems fluctuate.  (A.R. 49.)

Plaintiff has significant experience working in an office setting, listing such jobs as receptionist and customer service.  (A.R. 52.)  She claims that even those jobs would be difficult for her due to the problems with her hands, noting specifically problems writing, typing, and filing.  (A.R. 52.)

Plaintiff also testified she has difficulty walking.  She explained that her feet and toes tingle, her right knee "seems to be more limited," and she cannot move her right arm "like I used to."  (A.R. 55.)  She can perform household chores for 15 minutes at a time before having to take a break.  (A.R. 55.)

Plaintiff testified she will go grocery shopping approximately "four days in a row at the first of each month" after receiving her food stamps.  (A.R. 44.)  She explained that it hurts her hands to carry grocery bags, and it is hard for her to walk for long periods of time.  Accordingly, she shops several days in a row to spread out the physical activity.  (A.R. 44-45.)  Nevertheless, she also testified that even

those truncated shopping trips take her a couple of hours due to her slow pace.

(A.R. 45.)

Plaintiff smokes cigarettes.  (A.R. 46.)  She attempted to quit and testified that she wants to quit, but she has been unable to do so.  (A.R. 46.)  She used to smoke a pack and a half per day, but had reduced her use to half a pack per day at the time of the hearing.  (A.R. 46.)

### 2. Vocational Expert's Testimony

Delane Hall, a Vocational Expert (the "VE"), also testified before the ALJ. (A.R. 56-72.)  The ALJ posed the following hypothetical individual:

> an individual with the same past work history as Plaintiff; of a similar age and educational background; who can lift/carry and push/pull 10 pounds frequently and 20 pounds occasionally; who can stand/walk and sit 6 hours in an 8-hour workday; who can frequently climb ramps and stairs, balance, stoop, and crouch; who cannot climb ladders, ropes, or scaffolds; who can only occasionally kneel or crawl; and who should avoid concentrated exposure to extreme cold, vibrations, and hazards (including unprotected heights and dangerous machinery).

(A.R. 62.)  The ALJ then asked whether such an individual could perform any of Plaintiff's past relevant jobs.  The VE said such an individual could perform Plaintiff's jobs of telephone solicitor and data entry clerk.  (A.R. 62.)  The VE said such an individual also could perform the jobs of office helper (SVP of 2, physical demand light) and mail clerk (SVP of 2, physical demand light).  (A.R. 63.)

The ALJ then asked the VE to assume a person with the same limitations and characteristics as stated before, but who can stand/walk two hours in an eight-hour workday; can only occasionally climb ramps and stairs, balance, stoop, crouch, and crawl; and must avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation. (A.R. 63-64.) The VE said the individual could perform the jobs of telephone solicitor and data entry clerk. (A.R. 64.)

Next, the ALJ asked the VE to assume a person with the same limitations and characteristics as the second hypothetical, but who can only frequently handle, finger, and feel; must have the option of working with shaded lenses; and should not be required to work in an environment with noise above a 3/5 on the scale set forth in the DOT. (A.R. 64.) The VE said there are no jobs in the national economy that such an individual could perform due to the limitation with fingering and handling. (A.R. 64-65.)

The ALJ then asked the VE to assume a person with the same limitations and characteristics as the first hypothetical, but who can only frequently handle, finger, and feel; must have the option of working with shaded lenses; and should not be required to work in an environment with noise above a 3/5 on the scale set forth in the DOT. (A.R. 65.) The VE said the individual could still perform the

jobs listed in the context of the first hypothetical, with the exception of data entry clerk. (A.R. 65-68.)

Next, the ALJ asked the VE to assume a person with the same past work history as Plaintiff and who is of a similar age and educational background, but who would be off-task 20 percent of an eight-hour workday and 40-hour workweek. (A.R. 68.) The VE said, based on his experience in job markets and discussions with employers, there are no jobs in the national economy that such an individual can perform. (A.R. 68-69.)

On questioning from Plaintiff's attorney, the VE amended his testimony regarding the hypotheticals which contemplated frequent but not constant handling and fingering. The VE said such an individual could not perform the jobs of customer service, purchasing agent, or administrative clerk, but still could perform the jobs of office helper, mail clerk, and telephone solicitor. (A.R. 69-71.) But the VE testified all the jobs he listed would be eliminated if handling/fingering were reduced to occasional. (A.R. 71.) In addition, all jobs would be eliminated if Plaintiff's public contact were limited due to headaches. (A.R. 72.)

**B.     Medical Evidence**

The A.R. also includes the following pertinent medical records. Additional records may be discussed below as appropriate.

### 1. Treating Physician Evidence

#### a. Chelsey Field, DO

Dr. Field is Plaintiff's treating family medicine physician. Dr. Field issued two statements on November 12, 2014, one regarding Plaintiff's physical condition (A.R. 741-746) and another regarding Plaintiff's mental condition (A.R. 747-749).

The statement regarding Plaintiff's physical condition contains the following germane opinions: Plaintiff can lift and carry up to 20 pounds frequently, 50 pounds occasionally, and never more than 50 pounds; Plaintiff's lift/carry limitations are due to "weakness, tingling of upper extremities"; Plaintiff can sit five hours without interruption and six hours total in an eight-hour workday; Plaintiff can stand three hours without interruption and four hours total in an eight-hour workday; Plaintiff can walk one hour without interruption and three hours total in an eight-hour workday; when not sitting, standing, or walking, Plaintiff should have "arms in lap, sitting, resting"; Plaintiff does not require a cane to ambulate; Plaintiff can walk up to a 1/2 mile; with her right hand, Plaintiff can reach and feel frequently, and reach overhead, handle, finger, and push/pull occasionally; with her left hand, Plaintiff can reach, reach overhead, feel, handle, finger, and push/pull occasionally; limitations in Plaintiff's use of her hands are due to "neuropathy, progressive weakness, parsthesias, and decreased sensation of

hands, worsened by overhead position"; Plaintiff can operate foot controls occasionally with both her right and left feet; limitations in Plaintiff's use of her feet are due to "LE edema, neuropathy, decreased sensation, pain"; Plaintiff can perform all postural activities occasionally; limitations in Plaintiff's ability to perform postural activities are due to "obesity, [history of cerebrovascular accident ("CVA") with weakness]"; Plaintiff's hearing and vision are not affected; Plaintiff can operate a motor vehicle and tolerate humidity and wetness frequently, can tolerate moving mechanical parts, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibrations occasionally, and can never tolerate unprotected heights; Plaintiff can tolerate quiet environments continuously, moderate and loud environments occasionally, and never very loud environments; Plaintiff's environmental limitations are due to "migraines worsened by noise, neuropathy." Noteworthy among a list of activities Plaintiff can or cannot perform, Dr. Field's stated Plaintiff cannot "sort, handle, or use paper/files," due to "neuropathy and difficulty with fine motor of fingers"; prolonged computer use causes Plaintiff migraines. (A.R. 741-746.)

The statement regarding Plaintiff's mental condition contains the following germane opinions: Plaintiff has mild impairment in understanding and remembering simple instructions, and carrying out simple instructions; she has

14

moderate impairment in the ability to make judgments on simple work-related decisions, understanding and remembering complex instructions, and carrying out complex instructions; she has marked impairment in the ability to make judgments on complex work-related decisions; her limitations are due to a history of two CVAs with memory impairment; Plaintiff is moderately limited in interacting appropriately with the public, supervisors, and co-workers, and in responding appropriately to usual work situations and to changes in a routine work setting; these limitations are due to "migraines causing irritability, [history of] CVA [with] residual impairment."

Although apparently unrelated to her mental condition, Dr. Fields also reiterated that Plaintiff is limited in "fine motor use of hands and lengthy use of computers." (A.R. 747.) She explained the basis of this limitation was "[a]ntiphospholipid syndrome needing anticoagulation with recent gastric bleed needing lower anticoagulation causing daily [symptoms] of pain, migraines, paresthesias."

### 2. Examining Physician Evidence

#### a. Brian Schnitzer, MD

Dr. Schnitzer examined Plaintiff "at the request of the Disability Determination Services of the Montana Department of Public Health and Human

Services" ("DDS").  (A.R. 468.)  Notable findings in Dr. Schnitzer's report include the following: Plaintiff "was able to dress and undress herself and position herself about the examination table without assistance," and "was able to move from chair to chair, chair to table, and table to chair without difficulty or assistance"; regarding Plaintiff's extremities, "[m]otor function, sensory function, and neurovascular function grossly okay," and Plaintiff's "subjective weakness of the right leg…does not seem to interfere with range of motion of this extremity"; Plaintiff "did seem relatively functional in the environment of this examination and considering her training as a 'computer programmer,' such a sedentary position might serve her purposes"; Plaintiff's "neurologic deficits are primarily of a subjective nature with paresthesias described as 'numbness/tingling/hurting"; "[g]rip strength/gross handling/fine fingering are relatively intact."  (A.R. 468-471.)

### b.    F. Tom Peterson, Ed. D

Dr. Peterson conducted a mental status evaluation of Plaintiff upon referral from DDS.  Dr. Peterson specifically was asked to offer an opinion regarding Plaintiff's "ability to manage funds" and "ability to engage in work-related activity."  (A.R. 475.)  Notable findings in Dr. Peterson's report include the following: Plaintiff "demonstrated efficient fine motor function"; "[l]arge motor

function, as evidenced in her gait, was something slowed and a bit lumbering…[h]owever, she navigated the environment without difficulty"; "[d]epression appeared adequately managed by medication"; "she evidenced behavioral features suggestive of despondency"; Plaintiff "demonstrates adequate intellect and psychological authority to engage in work-related activity." (A.R. 474-484.)

### 3. Non-Examining Physician Evidence

#### a. Ronald Hull, MD

Dr. Hull reviewed Plaintiff's medical records, but did not examine her, and did not testify at the hearing. He issued an opinion on December 3, 2013. (A.R. 86-95.) Dr. Hull opined that Plaintiff could lift and carry 20 pounds occasionally and ten pounds frequently. (A.R. 102.) He also found Plaintiff can stand or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour work day. (A.R. 102.) Dr. Hull also stated Plaintiff can perform unlimited pushing/pulling, except as limited for lift and/or carry; can frequently climb ramps/stairs, balance, stoop, kneeling, and crouch; can occasionally kneel and crawl; and can never climb ladders/ropes/scaffolds. (A.R. 102.) He noted that Plaintiff should avoid concentrated exposure to extreme cold, fumes, odors, dusts, gases, poor ventilation and hazards. (A.R. 103.) He ultimately concluded that

"[f]rom a physical standpoint, [Plaintiff] can be expected to engage in SGA at the light duty physical demand capacity as defined in the written RFC," and therefore opined that Plaintiff is not disabled.  (A.R. 103-105.)

### b. Dean Gregg, Ph.D.

Dr. Gregg reviewed Plaintiff's medical and mental health records, but did not examine her, and did not testify at the hearing.  He issued an opinion on December 3, 2013.  (A.R. 86-95.)  Dr. Gregg assessed Plaintiff as suffering from affective disorders and anxiety-related disorders.  (A.R. 100.)  Dr. Gregg determined Plaintiff has no restriction of activities of daily living; mild difficulties in maintaining social functioning and concentration, persistence, or pace; and no repeated episodes of decompensation.  *Id*.  Dr. Gregg concluded that Plaintiff's "[p]rimary obstacles to work appear to be physical problems, with depression and anxiety secondary to this."  *Id*.

### c. Tim Schofield, MD

Dr. Schofield reviewed Plaintiff's medical records at the reconsideration phase.  (A.R. 108-117.)  He amended Plaintiff's exertional limitations as follows: Plaintiff can stand or walk for two hours in an eight-hour workday; and can occasionally climb ramps/stairs, balance, stoop, kneeling, and crouch.  (A.R. 114.) He ultimately concluded that "[f]rom a physical standpoint, [Plaintiff] can be

expected to engage in SGA at the seated light duty physical demand capacity as detailed in the written RFC," and therefore agreed with Dr. Hull's conclusion that Plaintiff is not disabled. (A.R. 115-116.)

### d. Marsha McFarland, Ph.D.

Dr. McFarland reviewed Plaintiff's mental health records at the reconsideration phase. (A.R. 108-117.) She affirmed Dr. Gregg's assessment as written. (A.R. 112.)

### 4. Lay Witness Evidence

SSA employee J. Preble noted on a field office disability report that Plaintiff "had a hard time walking to and from the interview desk. She hobbled and limped." (A.R. 233.)

### C. The ALJ's Findings

The ALJ followed the five-step sequential evaluation process in considering Plaintiff's claim. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of June 1, 2014. (A.R. 15.) Second, the ALJ found that Plaintiff had the following severe impairments: "antiphospholipid antibody syndrome ["AAS"] with coagulation disorder." (A.R. 16.) Third, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meet or medically equal any one of the

impairments in the Listing of Impairments.  (A.R. 18.)  Fourth, the ALJ stated

Plaintiff has the following residual functional capacity ("RFC"):

> [T]he claimant has the [RFC] to perform light work as defined in 20
> CFR 404.1567(b) and 416.967(b) except the claimant can frequently
> climb ramps and stairs, balance, stoop, and crouch; cannot climb
> ladders, ropes, and scaffolds; can occasionally kneel and crawl; and
> should avoid concentrated exposure to extreme cold, vibrations, and
> hazards such as unprotected heights and dangerous machinery.

(A.R. 18-22.)  The ALJ next found that Plaintiff was able to perform the past

relevant work of customer service representative, telephone solicitor, purchasing

agent, and data entry clerk.  (A.R. 22-24.)  The ALJ found Plaintiff also can

perform other jobs, such as file clerk/office helper and mail clerk.  (A.R. 24.)

Thus, the ALJ found that Plaintiff is not disabled.  (A.R. 24.)

## IV.  DISCUSSION

Plaintiff argues that the ALJ erred by (1) failing to give proper weight to Dr.

Field's opinions, (2) failing to provide clear and convincing reasons for

discounting Plaintiff's credibility, (3) failing to give proper weight to the SSA

employee's observation, and (3) failing to support the RFC with sufficient

evidence.

### A.    The ALJ's Evaluation of a Treating Source Opinion

In assessing a disability claim, an ALJ may rely on "opinions of three types

of physicians: (1) those who treat the claimant (treating physicians); (2) those who

examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The Commissioner applies a hierarchy of deference to these three types of opinions. The opinion of a treating doctor is generally entitled to the greatest weight. *Id*. ("As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."); *see also* 20 C.F.R. § 404.1527(c)(2). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830.

"The opinion of a treating physician is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)). "However, the opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Id*. *See also Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.").

If the treating physician's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques, or is inconsistent with other substantial evidence in the record, it is not entitled to controlling weight. *Orn v. Astrue*, 495 F.3d 625, 631-32 (9th Cir. 2007) (quoting Social Security Ruling 96-2p). Nevertheless, in that event the ALJ must consider the factors listed in 20 C.F.R. § 404.1527(c) to determine what weight to accord the opinion. *See* Social Security Ruling 96-2p (stating that a finding that a treating physician's opinion is not well supported or inconsistent with other substantial evidence in the record "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."). The factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) the specialization of the treating source; and (6) any other factors brought to the ALJ's attention that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)(I)-(ii), (c)(3)-(6). *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

Opinions of treating physicians may only be rejected under certain criteria. *Lester,* 81 F.3d at 830. To discount an uncontradicted opinion of a treating physician, the ALJ must provide "clear and convincing reasons." *Id.* To discount the controverted opinion of a treating physician, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)*; Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ can accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors' are correct." *Reddick*, 157 F.3d at 725. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester*, 81 F.3d at 831 (emphasis in original). However, "the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

There is no dispute that Dr. Field qualifies as a treating physician.  (*See e.g.* A.R. 22 ("The [ALJ] has considered the opinion of the claimant's treating physician, Chelsey Field.").)  Accordingly, even if the ALJ determined that her opinions were not entitled to controlling weight, the opinion was still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527.  The ALJ did not do so.  She simply rejected Dr. Field's opinions, assigning her opinions "no weight."  (A.R. 22.)  This alone constitutes reversible error.  *Trevizo*, 871 F.3d at 676.

In addition, Dr. Field completed opinion statements expressly designed to provide information as to Plaintiff's ability to work.  The most salient opinions contained in Dr. Field's statements regard Plaintiff's limited use of her hands, and specifically that she cannot "sort, handle, or use paper/files," due to "neuropathy and difficulty with fine motor of fingers."  (A.R. 746.)  Because Dr. Field's opinions are contradicted by the opinions of the non-examining physicians, the ALJ must provide "specific and legitimate reasons supported by substantial evidence in the record" to discount Dr. Field's opinions.  *Lester*, 81 F.3d at 830.  The ALJ cited the following reasons for giving Dr. Field's opinions "no weight."

First, the ALJ gave no weight to Dr. Field's opinion that Plaintiff is limited to a reduced range of sedentary work "because examination results routinely

revealed the claimant to be in no acute distress and to be comfortable with no pedal edema or focal neurologic deficits." (A.R. 22.) The Court finds these are not specific and legitimate reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830.

To begin with, these reasons are not sufficiently specific. In support of these assertions, the ALJ cites "8F," which is a group of 44 pages in the A.R., not all of which are authored by Dr. Field. Such an imprecise citation leaves the Court with little other than speculation as to exactly which "examination results" the ALJ intended to rely upon.

In addition, the reasons provided do not provide a "detailed and thorough summary of the facts and conflicting clinical evidence," nor does the ALJ "set forth [her] own interpretations and explain why they, rather than the doctors' are correct." In fact, the ALJ offers no explanation why the evidence she points to contradicts any opinion provided by Dr. Field. For example, why does a finding of no pedal edema contradict any of Dr. Field's opinions?

Finally, the stated reasons are not accurate. It is true that Dr. Field noted that Plaintiff had no pedal edema or neurologic deficits on one visit on November 3, 2014. (A.R. 520). On many other visits, however, Dr. Field specifically noted lower extremity swelling (A.R. 501, 505, 508, 512), and numbness tingling in

Plaintiff's extremities (A.R. 500, 511, 515, 519, 523). In addition, the Plaintiff was not routinely found to be in no acute distress; rather, she routinely presented with headache, pain, and other conditions of acute distress. (*See e.g.,* A.R. 500, 504, 508, 511, 515, 519, 523, 535, 538.)

Second, the ALJ gave "no weight" to Dr. Field's opinion because "Dr. Field relied too heavily on the claimant's subjective complaints, as opposed to the objective findings and indications." (A.R. 22.) The ALJ does not provide any citation for this statement, and the Court therefore has no way of determining how the ALJ arrived at this conclusion. She also does not explain what objective findings and indications are lacking, and why their absence would tend to contradict Dr. Field's opinions. In addition, Dr. Field's notes again appear to contradict the ALJ's conclusion. At the very least, Dr. Field regularly tested Plaintiff's INR levels at her appointments, and there are numerous findings in the A.R. of the Plaintiff experiencing weakness, tingling in her hands, and headache associated with lowered INR levels. (*See e.g.,* A.R. 502, 506, 515, 519, 523, 525.)

Finally, the ALJ gave no weight to the opinions provided in Dr. Field's psychological medical source statement because, according to the ALJ, "the mental status examinations of record have usually found the claimant to be in no distress, appropriately groomed, normal, and pleasant," and because Plaintiff has not

"undergone any inpatient or outpatient treatment with a psychiatrist or psychologist." (A.R. 22.) Once again, the ALJ cites only to "8F generally," and, once again, the Court finds her cited evidence to be insufficiently specific. Moreover, at least one of Dr. Field's records within 8F reports that Plaintiff's mood was "overall very depressed," and Dr. Fields refilled Plaintiff's Prozac prescription in effort to treat her depression. (A.R. 527-529.) Plaintiff continued to be treated with Prozac throughout the visits documented in Exhibit 8F. As before, the ALJ does not address the contradictory records within 8F.

For the foregoing reasons, the Court finds that the ALJ erred in weighing the opinions of Plaintiff's treating physician, Dr. Field. The ALJ failed to support her decision to afford Dr. Field's opinions no weight with specific and legitimate reasons supported by substantial evidence in the record.

The Court further finds that the error is not harmless. An ALJ's error is harmless if it is "inconsequential to the ultimate nondisability determination." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). Here, Dr. Field opined that Plaintiff cannot "sort, handle, or use paper/files," due to "neuropathy and difficulty with fine motor of fingers." In light of the VE's testimony that a reduction to only occasional handling and fingering would

eliminate all of the jobs he proposed, consideration of these limitations may substantially impact the determination of Plaintiff's disability.

**B.** **The ALJ's Credibility Determination**

Plaintiff argues that the ALJ's credibility determination was erroneous because the ALJ failed to support her determination with clear and convincing evidence. Plaintiff further argues that her testimony was fully supported by the objective medical evidence. The Commissioner counters that the ALJ properly evaluated Plaintiff's credibility.

The credibility of a claimant's testimony is analyzed in two steps. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* Second, if the claimant meets the first step, and there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if she provides "specific, clear and convincing reasons" for doing so. *Id.*

"In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" *Turner v. Commissioner of Soc. Sec. Admin.*, 613 F.3d 1217, 1224

n.3 (9th Cir. 2010).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Reddick*, 157 F.3d at 722 (quoting *Lester*, 81 F.3d at 834).  The clear and convincing standard "is not an easy requirement to meet: '[It] is the most demanding required in Social Security cases.'"  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014).

Here, the first step of the credibility analysis is not at issue.  The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms, and there is no argument that Plaintiff is malingering.  Therefore, the ALJ was required to cite specific, clear and convincing reasons for rejecting Plaintiff's subjective testimony about the severity of her impairments.

Here, the ALJ provided several reasons for discounting Plaintiff's testimony regarding the extent of her impairment, including an inconsistent work history; the ability to perform a reduced range of light work after her alleged onset date; a general discrepancy between Plaintiff's reports of her pain and symptoms and the objective medical evidence; gaps in seeking treatment for her condition; and no history of seeking specialist treatment for her alleged symptoms.  (A.R. 19-21.)  In addition, the ALJ also found her statements regarding her inability to walk and

move about were contradicted by the medical records which consistently noted an unimpaired ability to ambulate. (A.R. 21.) The ALJ also found Plaintiff's testimony that she was unable to use her hands to pick up a file folder or fingernail file was contradicted by records indicating she demonstrated fine motor function, by her ability to write clearly and legibly, and by her ability to grasp and handle a "large handle-less metal cup" at the time of her hearing. (A.R. 20.) The ALJ also found that Plaintiff's complaints of debilitating migraines and headache were contradicted by the fact that she had not been referred to a neurologist, nor had she regularly been taking prescription strength migraine medication. (A.R. 20.)

Ultimately, the Court finds that the ALJ's reasons for discounting Plaintiff's testimony were sufficient. The ALJ cited specific testimony she found not credible, and cited specific evidence in the record which she interpreted to contradict Plaintiff's testimony. Although this Court may not evaluate the evidence in the same way as the ALJ, the Court may not substitute its own interpretation of the evidence for the ALJ's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Accordingly, the ALJ did not err in her credibility determination.

### C.    The ALJ's Evaluation of Lay Witness Testimony

Plaintiff also argues the ALJ failed to cite germane reasons to discount the

testimony of J. Preble, the SSA employee who remarked on Plaintiff's condition. The Commissioner argues that the ALJ properly considered the testimony.

"Lay testimony as to a claimant's symptoms is competent evidence which the [ALJ] must take into account, unless he expressly determines to disregard such testimony, in which case 'he must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). Competent lay witness testimony "*cannot* be disregarded without comment." *Id.* (emphasis in original). The ALJ is not, however, required to discuss every witness's testimony on an individualized, witness-by-witness basis. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). "[I]f the ALJ gives germane reasons for rejecting the testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id.*

The ALJ explained that she gave "little weight" to the employee's observation that Plaintiff had a hard time walking to and from the interview desk, and hobbled and limped. The ALJ stated that she gave this observation little weight because "there is no contemporaneous objective medical reason for this walking difficulty and this behavior is inconsistent with her being able to ambulate well at both consultative examinations." (A.R. 21.)

The ALJ is correct that the consultative examinations do contradict the SSA employee's observation. (*See* A.R. 470 ("Gait and station, as suggested, were not adversely affected. The patient is able to ambulate without an assistive device.").) Consequently, this constitutes a germane reason to give this witness's testimony less weight. Notably, there is no indication that the ALJ disregarded the testimony outright; rather, she weighed it against other contradictory testimony from medical sources and found it to be less compelling.

Therefore, the Court finds that the ALJ did not err in her consideration of the lay witness testimony.

### D.     The ALJ's Assessment of Plaintiff's RFC

Because the Court concludes that the ALJ failed to properly analyze the medical source opinions, the Court need not reach Plaintiff's allegation that the ALJ failed to properly assess Plaintiff's RFC. The limitations identified by Dr. Field, and the extent to which they should be credited, are inextricably linked to the ALJ's determination of Plaintiff's RFC. On remand, the ALJ should incorporate any changes in Plaintiff's RFC that arise from her analysis of the evidence.

///

///

## V.    REMAND OR REVERSAL

Plaintiff asks the Court to remand this case for further proceedings.  "[T]he decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court."  *Reddick v. Chater*, 157 F.3d at 728. If the ALJ's decision "is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)).  "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded.  Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

The Court finds remand for further proceedings is appropriate.  On remand, the ALJ shall consider reconsider Dr. Field's opinions, paying special attention to her opinions that correspond to the VE's testimony of impairments that would disqualify Plaintiff from working.

///

///

///

## VI.   CONCLUSION

Based on the foregoing, **IT IS ORDERED** that the Commissioner's decision be **REVERSED** and this matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED this 24th day of September, 2018.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge